IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NAPOLEON T. ANNAN-YARTEY SR.,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICER T. MURANAKA; OFFICER ROYCE S. OHIRA; OFFICER CHAD K. MURPHY; HONOLULU CHIEF OF POLICE LOUIS M. KEALOHA; HONOLULU POLICE DEPARTMENT; CITY & COUNTY OF HONOLULU; and "ALL POLICE OFFICERS INVOLVED AND OFFICIALS,"<br><br>Defendants. | CIV. NO. 16-00590 JMS-KJM<br><br>ORDER: (1) GRANTING APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS; (2) DISMISSING SECOND AMENDED COMPLAINT IN PART; AND (3) DIRECTING SERVICE |

**ORDER: (1) GRANTING APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS; (2) DISMISSING SECOND AMENDED COMPLAINT IN PART; AND (3) DIRECTING SERVICE**

## I. INTRODUCTION

On November 1, 2016, pro se Plaintiff Napoleon T. Annan-Yartey, Sr. ("Plaintiff") filed a Complaint for Civil Right Violation against the City and County of Honolulu (the "City"); Honolulu Police Department ("HPD");[1] HPD

---

[1] The court considers claims against HPD to be against the City. *See, e.g.*, *Dowkin v. Honolulu Police Dep't.*, 2010 WL 4961135, at *3 (D. Haw. Nov. 30, 2010) (concluding that because "HPD is not an independent legal entity . . . [t]he court will treat Plaintiff's claims against the HPD as claims against the City") (citations omitted).

Officers T. Muranaka ("Muranaka"), Royce S. Ohira ("Ohira"), and Chad K. Murphy ("Murphy") in their individual capacities; HPD Chief Louis M. Kealoha ("Kealoha") in his official capacity; and "all police officers involved and officials" ("Doe Defendants") (collectively, "Defendants"), ECF No. 1, and an Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application"), ECF No. 4.  On November 3, 2016, Plaintiff filed an Amended Complaint, ECF No. 5, followed by a "Second Amended Complaint" (docketed as a "Supplement" because Plaintiff did not yet have court leave to file an amended complaint) on November 15, 2016, ECF No. 6.  The next day, Plaintiff filed a Motion for Leave to File an Amended Complaint, ECF No. 7, which was granted on November 17, 2016, ECF No. 8.  On November 21, 2016, Plaintiff filed his "Second Amended Complaint for Civil Right Violation" ("SAC"), correcting an error on the cover page of the previously filed Supplement.  ECF No. 10.

As set forth below, the court GRANTS Plaintiff's IFP Application, DISMISSES the SAC in part, and DIRECTS service of the SAC.

## II.  DISCUSSION

### A.    IFP Application

Plaintiff's IFP Application indicates that he has no income, assets, or expenses.  IFP Appl. ¶¶ 2-6, 8, ECF No. 4.  Because Plaintiff has made the

required showing under 28 U.S.C. § 1915 to proceed *in forma pauperis* (*i.e.*, without prepayment of fees), the court GRANTS Plaintiff's IFP Application.

**B.     The SAC**

The SAC asserts claims pursuant to 42 U.S.C. §§ 1981, 1983, and 1985(3) for alleged discrimination and violations of Plaintiff's rights secured by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as well as state law claims.

*1.     Factual Allegations*

Plaintiff, an African-American male, alleges that Muranaka, Ohira, and Murphy arrested him, and searched and seized his belongings without probable cause after Plaintiff, who was carrying a bag of recently purchased food, crossed a street along with other pedestrians. SAC ¶¶ 8, 9, 21-23, 25-26. Muranaka and Ohira allegedly made racially derogatory remarks;[2] Ohira choked Plaintiff; all three officers "pulled him by his neck and then threw him on the ground," restrained him with handcuffs, and took his wallet; Muranaka searched Plaintiff's bag and took his federally-issued ID; and all three officers held him on the ground for a lengthy period of time until Muranaka stated that Plaintiff "came up clean;" all without telling Plaintiff why he was stopped. *Id.* ¶¶ 24, 26-29, 31, 33. Plaintiff

---

[2] Muranaka allegedly told Plaintiff "no you niggers do not have rights," and Ohira allegedly said "oh shut up you nigger[] if you do not shut up I am going to lock you up and take you to jail." SAC ¶ 27.

3

was charged in state court with disobeying traffic signals and littering based on affidavits of probable cause containing allegedly false statements or omissions by the three officers. *Id.* ¶¶ 34, 36. Plaintiff appeared in court several times related to the allegedly false charges before they were dismissed with prejudice, based on a motion by the prosecuting attorney. *Id.* ¶¶ 39-40. Somewhat confusingly, the SAC later alleges that "criminal proceedings against [Plaintiff] went to trial and the court came with a (not guilty verdict) thereafter all charges were dismissed in favor of Plaintiff[]," *id.* ¶ 52, and that "[a]ll 65 charges were terminated in Plaintiff's favor," *id.* ¶ 81.

Further, Plaintiff alleges that the officers' conduct was a direct result of the "deliberate policies and practices" of the City, including a failure to: (1) "adequately supervise and train its officers"; (2) "properly and adequately monitor and discipline its officers"; and (3) "adequately and properly investigate citizen complaints of police misconduct." *Id.* ¶¶ 44, 47. More specifically, Plaintiff alleges that HPD has a "policy, practice and/or custom of unlawfully interfering with and/or arresting, without reasonable suspicion or probable cause, individuals who exercise their rights under the First Amendment by engaging in monitoring and documenting police activities and/or misconduct." *Id.* ¶ 48. Finally, Plaintiff alleges that HPD Chief Louis M. Kealoha ("Kealoha") "exercised and delegated . . . municipal final decision making power to the Internal Affairs

4

Bureau and others[, and] trained and supervised individual Defendants Muranaka, Murphy and . . . Ohira." *Id.* ¶ 17.

The SAC alleges § 1983 claims against all Defendants for violation of rights protected by the First, Fourth, Fifth, and/or Fourteenth Amendments to the United States Constitution including due process (Counts 1 and 5); unreasonable search, seizure, and arrest without probable cause (Count 2); excessive force (Count 3); and malicious prosecution (Count 4). The SAC alleges claims against Muranaka, Chad, and Ohira for (1) violation of the Fourteenth Amendment, and for racial discrimination and conspiracy to discriminate pursuant to 42 U.S.C. §§ 1981, 1983, and 1985(3) (Count 11); and (2) intentional and negligent infliction of emotional distress (Count 12). The SAC alleges state law claims against all Defendants for violation of rights protected by the Hawaii State Constitution including equal protection (Count 7); unlawful search, seizure, arrest, and excessive force (Count 8); and malicious prosecution (Count 9). And the SAC alleges claims against the City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (Count 6), and the doctrine of respondeat superior (Count 10).

As a result of the foregoing, the SAC alleges that Plaintiff suffered "physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment." *Id.* ¶ 55. *See also id.* ¶¶ 57, 58, 61, 63, 70.

Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.  *Id.* ¶ VII.

### 2. *Standards of Review*

The court must subject each civil action commenced pursuant to 28 U.S.C. § 1915(a), governing IFP proceedings, to mandatory screening.  The court must order the dismissal of any claim that it finds "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief against a defendant who is immune from such relief."  *Id.* § 1915(e)(2)(B); *see, e.g.*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners"); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to sua sponte dismiss an IFP complaint that fails to state a claim).

To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim.  *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  A plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief

6

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678-79 (citing *Twombly*, 550 U.S. at 556). But factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the plaintiff is entitled to relief as required by Rule 8. *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). Thus, a district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendant fair notice of the wrongs allegedly committed. *See McHenry v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery").

Plaintiff is appearing pro se; consequently, the court liberally construes the Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).

### 3. *Application*

#### a. *The SAC fails to state a constitutional claim against the City*

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Although "Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies," *Monell*, 436 U.S. at 690, a municipality can only be liable "for its own" constitutional violations. *City of Okla. City v. Tuttle*, 471 U.S. 808, 818 (1985) (quoting *Monell*, 436 U.S. at 683).

That is, § 1983 does not impose liability on municipalities for constitutional violations committed by its employees under the theory of

respondeat superior. Rather, "*Monell* teaches that [a municipality] may only be held accountable if the deprivation was the result of municipal 'custom or policy.'" *Id*. at 817. "[T]he constitutional violation must be caused by 'a policy, practice, or custom of the entity,' or be the result of an order by a policy-making officer." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1139 (9th Cir. 2012) (citations omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted). In other words,

> Local governing bodies can be held liable . . . where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where the action is made "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."

*Jackson v. Barnes*, 749 F.3d 755, 762-63 (9th Cir. 2014) (quoting *Monell*, 436 U.S. at 690-91) (emphasis omitted). "An official municipal policy . . . 'includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.'" *Tsao*, 698 F.3d at 1144 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Moreover, "a local government body can be held liable under § 1983 for policies of inaction as well as policies of action." *Jackson*, 749 F.3d at 763 (citing *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1185-86 (9th Cir. 2002)). "[A] policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" *Id*. (quoting *Tsao*, 698 F.3d at 1143). To state a claim based the "inaction" theory, a plaintiff must show that the policy amounts to "deliberate indifference to the plaintiff's constitutional right." *Id.* (quoting *Tsao*, 698 F.3d at 1143). "This requires showing that the defendant 'was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.* (quoting *Tsao*, 698 F.3d at 1145). Under this theory, a plaintiff must also show that "these policies were the moving force behind the employee's violation of [his] constitutional rights, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Gibson*, 290 F.3d at 1194 (citation omitted).

Here, the SAC fails to allege sufficient facts to plausibly suggest a § 1983 claim against the City. The SAC fails to identify -- much less allege -- any applicable "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by HPD, the City, or any of its policy-making officers. *Jackson*, 749 F.3d at 762. Nor does the SAC allege facts demonstrating an improper custom based on "persistent and widespread" practices. *Tsao*, 698

F.3d at 1144; *see also Trevino*, 99 F.3d at 918. Rather, the SAC relies on allegations solely limited to one event involving Plaintiff and Muranaka, Ohira, and Murphy. Moreover, the SAC fails to allege facts demonstrating a policy of inaction. To the contrary, it merely alleges, in wholly conclusory fashion, that because HPD officers allegedly violated Plaintiff's constitutional rights during that one event, HPD therefore failed to train, supervise, monitor, and discipline its officers, and failed to investigate unspecified citizen complaints of police misconduct. SAC ¶ 67. And even assuming a policy of inaction was sufficiently alleged, the SAC fails to allege facts showing that the City had actual or constructive notice that it could have prevented the alleged constitutional violation(s) against Plaintiff by implementing a particular policy. *See Gibson*, 290 F.3d at 1194. Accordingly, Plaintiff's claims against the City are dismissed without prejudice.[3]

    b.  *Official capacity claims against Chief Kealoha*

The law is well-settled that "[c]laims against government officials in their official capacities are really suits against the government employer." *De-*

---

[3] Plaintiff's claim for violation of his First Amendment rights appears to be asserted in his *Monell* claim only. To the extent he asserts a claim for violation of his First Amendment rights against other Defendants, absent factual allegations regarding such violation, this claim is DISMISSED for failure to state a claim.

*Occupy Honolulu v. City & Cty. of Honolulu*, 2013 WL 2284942, at *5 (D. Haw. May 21, 2013) (quoting *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002)). Further, the SAC lacks any factual allegations as to Chief Kealoha specifically.[4] Thus, for the reasons set forth above, the SAC fails to state a claim against Chief Kealoha in an official capacity. Accordingly, Plaintiff's claims against Chief Kealoha in his official capacity are dismissed with prejudice.

   c. *Doe defendants*

The SAC's caption indicates that claims are alleged against Doe Defendants, ECF No. 10, but the SAC fails to include any factual allegations to put each Doe defendant on notice of each individual's alleged acts or omissions that Plaintiff claims violated his federal rights. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (explaining that under § 1983, a plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights) (citing *Iqbal*, 556 U.S. at 676).

  Moreover, because an anonymous defendant cannot be served, the use of Doe defendants is disfavored in federal court. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). While a plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, he must

---

[4] And even if Plaintiff intended to assert a § 1983 claim against Chief Kealoha in his individual capacity, the SAC's failure to allege specific conduct by Chief Kealoha causing a violation of Plaintiff's federal rights is fatal to such a claim.

allege facts to support how each individual Doe defendant violated the plaintiff's constitutional rights. If a plaintiff provides such details, he may then use the discovery processes to obtain the names of any Doe defendants he believes violated his constitutional rights and seek leave to amend to name those defendants, unless discovery will not uncover the identities, or the complaint would be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

For these reasons, the SAC fails to state a claim against Doe Defendants and such claims are therefore DISMISSED without prejudice.

>  d. *The SAC fails to state a claim for racial discrimination against Murphy*

Count 11 of the SAC alleges that Muranaka, Ohira, and Murphy discriminated and conspired to discriminate against Plaintiff based on his race in violation of the Equal Protection Clause of the Fourteenth Amendment, and §§ 1981, 1983, and 1985(3). SAC ¶¶ 1, 85-102.

To sustain an action under section 1983, not only must a plaintiff show "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right," *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation and internal quotation marks omitted), *vacated and remanded on*

*other grounds*, 556 U.S. 1256 (2009), a plaintiff must also allege that (3) he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

To state a § 1983 claim for violation of the Equal Protection Clause, Plaintiff must "show that the defendants acted with an intent or purpose to discriminate against plaintiff based on membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005). To state a claim under § 1981, Plaintiff must allege that he suffered intentional discrimination based on his race. *Martin v. Ampco Sys. Parking*, 2013 WL 5781311, at *14 (D. Haw. Oct. 24, 2013) (citing *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1487 (9th Cir. 1995)); *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985). And to state a claim under § 1985(3), Plaintiff must allege a conspiracy motivated by race or class-based discriminatory animus. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993); *see Bretz v. Kelman*, 773 F.2d 1026, 1028 (9th Cir. 1985) (explaining that an allegation of race or class-based discrimination is required to plead a § 1985(3) claim).

Here, the SAC fails to allege any facts demonstrating discriminatory intent on the basis of race by Murphy or that his conduct was motivated by race. Accordingly, the Court finds that Plaintiff has failed to state a claim pursuant to §§ 1981, 1983, or 1985(3) against Murphy. Count 11 is DISMISSED against Murphy without prejudice.

### III. **CONCLUSION**

Based on the foregoing, pursuant to 28 U.S.C. § 1915(e)(2)(B), Plaintiff's claims against the City, Doe Defendants, and Count 11 against Murphy are DISMISSED without prejudice, and claims against Kealoha in his official capacity are DISMISSED with prejudice. All remaining claims asserted against Muranaka, Ohira, and Murphy in their individual capacities are pled sufficiently to proceed beyond the court's initial screening.

Accordingly, the U.S. Marshal is DIRECTED to serve the Second Amended Complaint and summons on Defendants Muranaka, Ohira, and Murphy at Plaintiff's direction. Plaintiff is DIRECTED to mail a copy of the Second Amended Complaint and the fully completed service documents to the U.S. Marshal, as set forth below. If Defendants accept waiver of service of the summons, they shall return the completed waiver of service documents to the U.S. Marshal, who will file the waivers with the court. Defendants Muranaka, Ohira, and Murphy are thereafter directed to file an Answer or other response to

the Second Amended Complaint within the time allowed under the Federal Rules of Civil Procedure.  If, after service of the SAC, Plaintiff believes he can cure the deficiencies with his dismissed claims, he is free to file a motion for leave to file a third amended complaint in accordance with Federal Rule of Civil Procedure 15.

    IT IS HEREBY ORDERED:

1. The Clerk of Court is directed to send Plaintiffs two (2) summonses, two (2) USM-285 forms, two (2) Notice of Lawsuit and Request for Waiver of Service of Summons forms (AO 398), two (2) Waiver of Service of Summons forms (AO 399), and a copy of the endorsed Second Amended Complaint.  Plaintiff shall then complete the forms as directed, and submit the following documents to the United States Marshals Service in Honolulu, Hawaii, for service on each Defendant: a completed USM-285 form, a copy of the endorsed Second Amended Complaint, and a summons as to each Defendant.  A set of forms is needed for each Defendant.

2. Upon receipt of these documents and a copy of this Order, the United States Marshal shall serve on Defendant a copy of the Second Amended Complaint, completed Notice of Lawsuit and Request for Waiver of Service form (AO 398) and completed Waiver of Service

of Summons form (AO 399), as directed by Plaintiff pursuant to Rule 4 of the Federal Rules of Civil Procedure without payment of costs.

3. The United States Marshal is directed to retain the sealed summons and a copy of the Second Amended Complaint for future use. The United States Marshal shall file a returned Waiver of Service of Summons form as well as any request for waiver that is returned as undeliverable, as soon as it is received.

4. If a Waiver of Service of Summons form is not returned by any Defendant within sixty days from the date the United States Marshal mailed the request for waiver, the United States Marshal shall:

   a. Personally serve such Defendant with the above-described documents pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

   b. Within ten days after personal service is effected, the United States Marshal shall file the return of service for such Defendant, along with evidence of any attempts to secure a waiver of service of summons and of the costs subsequently incurred in effecting service on Defendant. The costs shall be enumerated on the USM-285 forms and shall include the costs incurred by the Marshal's office for photocopying additional

copies of the summons and Amended Complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served Defendant in accordance with the provisions in Federal Rule of Civil Procedure 4(d)(2).

5. Plaintiff shall serve a copy of all further pleadings or documents submitted to the court upon Defendants or their attorneys. Plaintiff shall include, with any original paper to be filed with the Clerk of Court, a certificate stating the date that an exact copy of the document was mailed to Defendants or their counsel. Any paper received by a District Court Judge or Magistrate Judge that has not been filed with the Clerk of Court or which does not include a certificate of service will be disregarded.

6. Plaintiff is notified that, until service of the Second Amended Complaint has been effected, Plaintiff should not file motions or other documents with the court. Plaintiff is further notified that he must

///

///

///

comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 5, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Annan-Yartey v. Muranaka, et al.*, Civ. No. 16-00590 JMS-KJM, Order: (1) Granting Application to Proceed in District Court Without Prepaying Fees or Costs; (2) Dismissing Second Amended Complaint in Part, and (3) Directing Service